IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

ERIC WALKER,

      Petitioner,

v.                                        Case No. 5:25-cv-00280

FBOP WARDEN FCI BECKLEY,

      Respondent.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On April 28, 2025, Petitioner Eric Walker ("Petitioner"), proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also pending is Petitioner's Motion to Waive the Requirement to Exhaust Administrative Remedies, (ECF No. 4). This matter is assigned to the Honorable Frank W. Volk, Chief United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Having thoroughly reviewed the record, the undersigned **FINDS** that Petitioner has not exhausted his administrative remedies, has not provided evidence in support of waiver of that requirement, and is not entitled to the application of credits he seeks. Accordingly, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Petitioner's Motion to Waive the Requirements to Exhaust Administrative Remedies, (ECF No. 4); **DISMISS** the Petition for a Writ of Habeas Corpus, (ECF No. 1); and remove this matter from the docket of the Court.

## I.    Relevant Facts

Petitioner is a federal prisoner presently incarcerated at Beckley Federal Correctional Institution ("FCI Beckley"), in Beckley, West Virginia, with a projected release date of November 27, 2028. *See* Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/, BOP Register No. 21748-032, (last accessed December 3, 2025). Petitioner is serving a sentence of 150 months for a drug distribution related offense out of the Eastern District of Kentucky, to be followed by six years of supervised release. *See U.S. v. Walker*, No.: 6:17-cr-00050-CHB-HAI-1 (E.D. Ky. Aug. 8, 2018), ECF No. 59.

Petitioner filed his pro se Petition for habeas relief under Section 2241 on April 28, 2025, (ECF No. 1), and claims the Federal Bureau of Prisons ("BOP") has failed to appropriately apply his earned time credits under the First Step Act[1] ("FSA"). (*Id.* at 6). It appears Petitioner is contending that he is entitled to earn and have applied to his projected release date Earned Time Credits ("ETC") under the FSA, despite being assessed a Medium Risk PATTERN score. He further argues that he has earned a risk

---

[1] The FSA, enacted on December 21, 2018, allows eligible federal prisoners who have not committed offenses enumerated in 18 U.S.C. § 3632(d)(4)(D) to earn 10 to 15 days of time credits for every 30 days of successful participation in Evidence Based Recidivism Reduction Programs and Productive Activities. 18 U.S.C. § 3632(d)(4)(A)(i). Prisoners who are determined "to be at a minimum or low risk for recidivating," may "earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities," if they have not increased their risk of recidivism over two consecutive assessments. 18 U.S.C. § 3632(d)(4)(A)(ii). The BOP utilizes the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) to evaluate "the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism," as well as to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." *United States v. Tinsley*, No. CR ELH-13-476, 2021 WL 5084691, at *16 n. 8 (D. Md. Nov. 2, 2021) (citing 18 U.S.C. §§ 3632(a)(1), (4)). A prisoner's FSA time credits can be applied to the prisoner's sentence to result in earlier release to pre-release custody, such as a residential reentry center ("halfway house" or "RRC") or home confinement, or up to 12 months of credit can be applied to a prisoner's term of supervised release. 18 U.S.C. §§ 3624(g), 3632(d)(4)(C). The credits can be earned retroactively beginning on the date that the FSA was signed into law. 18 U.S.C. § 3632(d)(4)(A).

reduction, but the BOP has failed to lower his risk status or apply his ETC. (ECF No. 2 at 2). For relief, he requests the court to order the BOP to apply the ETC he has earned and recalculate his projected release date. (ECF Nos. 1 at 7, 2 at 6, 11 at 2).

Petitioner further requested waiver of the exhaustion requirement. (ECF No. 4). Relying on what appears to be a form motion that has circulated the prison, Petitioner argues that the BOP has misinterpreted the FSA and requested a statutory interpretation of 18 U.S.C. §§ 3624 and 3632. (*Id.* at 1). Relying on *Coleman v. U.S. Parole Comm'n.*, 664 F. App'x 159, 162 (3d Cir. 2016), Petitioner contends, "Exhaustion is not required with regards to [c]laims which turn on [s]tatutory [c]onstruction." (*Id.*). He also appears to argue futility. (*Id.* at 2).

On May 8, 2025, the undersigned entered an Order directing Respondent to show cause why the relief requested by Petitioner should not be granted. (ECF No. 8). Respondent was further directed to address Petitioner's Motion to Waive the Requirement to Exhaust Administrative Remedies. (*Id.*).

Respondent provided a Response on July 7, 2025, contending that Petitioner's arguments related to exhaustion are without merit, that his reliance on the *Loper Bright Enterprises* case is misplaced, and that the BOP's determination of an inmate's recidivism risk level is not reviewable by the courts. (ECF No. 9). He argued that Petitioner's request for relief must be denied. (*Id.*).

Petitioner filed a reply brief on July 24, 2025, reiterating his arguments that the BOP's actions related to his recidivism risk assessment are against the plain requirements of the FSA. (ECF No. 11).

## II.    <u>Standard of Review</u>

While Respondent did not include a formal request for dismissal within his Response, he expressly seeks denial of the Petition, which functions as a request for dismissal. (ECF No. 9 at 1, 10, 12). Because the argument appears in a responsive pleading, the Court treats it as a motion for judgment on the pleadings. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). Whether analyzed as a motion to dismiss under Federal Rule of Civil Procedure 12(b) or a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the distinction makes no practical difference as the same standard of review applies to either motion, and both motions may be filed in habeas actions. *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations in the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). In a federal habeas case, the Court "must consider 'the face of the petition and any attached exhibits.'" *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, a court may consider "matters of public record" including documents from prior or pending court proceedings, *id.*, and "documents attached to the complaint … as well as those attached

to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship,* 471 F.3d at 526 n.1).

Construed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Response challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant "may contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* Second, the movant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with the petitioner, as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, "the court should grant dismissal only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion to dismiss under Rule 12(b)(1) is the appropriate avenue by which to raise the issue of mootness, because mootness generally deprives a federal court of jurisdiction under Article III of the United States Constitution. *See Justice v. Acosta*,

No. 2:17-CV-03681, 2018 WL 4291744, at *3 (S.D.W. Va. Sept. 7, 2018); *see also Estate of Peeples v. Barnwell Cty. Hosp.*, No. CIV.A. 1:13-01678, 2014 WL 607586, at *5 (D.S.C. Feb. 18, 2014) (collecting cases).

### III.  <u>Discussion</u>

As stated herein, Petitioner asks the Court to order the BOP to apply the ETC he has earned through programming despite his recidivism risk level being Medium and recalculate his projected release date considering these credits. (ECF Nos. 1 at 7, 2 at 6, 11 at 2). He also moves the Court for waiver of the exhaustion requirement based on a request for statutory construction analysis. (ECF No. 4). In response, Respondent requests the Court to deny the relief sought by Petitioner on the basis that Petitioner has failed to exhaust his administrative remedies, that the *Loper Bright Enterprises* case is inapplicable, and that the BOP's calculation of First Step Act Earned Time Credit is discretionary and non-reviewable. (ECF No. 9).

#### A. *Exhaustion*

The undersigned first considers Respondent's contention that Petitioner failed to exhaust his administrative remedies concerning his claim for FSA time credits and that this requirement should not be waived. Although § 2241 does not itself contain an exhaustion prerequisite, courts have judicially imposed a duty on prisoners to exhaust administrative remedies before bringing a claim under that statute. *See Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490–91 (1973); *see also McClung v. Shearin,* No. 03–6952, 2004 WL 225093, at *1 (4th Cir. Feb.6, 2004) (citing *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001)). A prisoner may be able to get the relief he seeks through the BOP grievance system, avoiding the need for any judicial intervention. *See Woodford v. Ngo*, 548 U.S. 81, 93–94 (2006). Where the

prisoner has not gained relief through administrative remedies, the administrative process creates a complete factual record for the court to review. *Id.*

The court may, in its discretion, waive exhaustion under certain circumstances, such as "where a petitioner demonstrates futility, the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or the administrative procedure is clearly shown to be inadequate to prevent irreparable harm." *Wright v. Warden,* Civil Action RDB–10–671, 2010 WL 1258181, * 1 (D. Md. Mar. 24, 2010) (internal citations omitted). However, "in the absence of exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent [...] courts require exhaustion of alternative remedies before a prisoner can seek federal habeas relief." *Timms v. Johns*, 627 F.3d 525, 530–31 (4th Cir. 2010) (internal citations and marking omitted). "While habeas corpus is 'always available to safeguard the fundamental rights of persons wrongly incarcerated,' it 'is the avenue of last resort.'" *Id.* (internal citations omitted).

The BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, provides a process by which an inmate can seek review of an issue relating to any aspect of his or her confinement. With certain exceptions, an inmate must first present the issue of concern informally to a BOP staff member within the procedures prescribed by the warden of the institution in which the inmate is confined. *Id.* at § 542.13. An inmate can then file a formal written Administrative Remedy Request on the specified form. *Id.* at § 542.14. If the inmate is unsatisfied with the warden's response to the request, the inmate can appeal the decision to the appropriate regional director and can then appeal the response of the regional director to the general counsel. *Id.* at §

542.15. The administrative remedy request and appeals must comply with the requirements specified by the BOP. *Id.* at §§ 542.14, 542.15.

One important aspect of exhaustion is that it creates an administrative record for the Court to review. As the BOP is charged with computing an inmate's sentence and has "developed detailed procedures and guidelines for determining the credit available to prisoners," *United States v. Wilson*, 503 U.S. 329, 335 (1992), the BOP should have the first opportunity to review its calculation in this case and determine if any errors were made. As a district court previously explained:

> "[T]he responsibility for determining sentence-credit awards lies with the Attorney General, through the BOP, as opposed to district courts." *United States v. Roberson*, 746 F. App'x 883, 885 (11th Cir. 2018) (citing *United States v. Wilson*, 503 U.S. 329, 330 (1992)). . . . Because the BOP calculates a prisoner's credit towards his federal sentence, a dissatisfied inmate "must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence." *Id.* (internal quotations and citation omitted).

*United States v. Usma*, No. 2:19-CR-133-SPC-MRM, 2022 WL 267518, at *1 (M.D. Fla. Jan. 28, 2022).

Here, it is plain from the face of the Petition as well as Petitioner's Motion to Waive the Requirement to Exhaust Administrative Remedies, that he has not exhausted his administrative remedies. (ECF Nos. 1 at 3, 4). Petitioner argues waiver of this requirement is appropriate because his requests for the forms were ignored, (ECF No. 1 at 2), because exhaustion attempts would be futile and he would be subjected to retaliation, (ECF No. 1 at 3), because exhaustion is not required or does not apply, (ECF No. 1 at 6), because he has made numerous attempts to elicit a response from the BOP but FCI Beckley staff has "created a system of roadblocks and obstructions," (ECF No. 2 at 1), because "claims that turn only on statutory

construction need not be exhausted," (ECF No. 4 at 1), and because his efforts would be futile because the BOP "is sure to rule adversely" on any administrative remedy, (ECF No. 4 at 2). However, Petitioner has provided no evidence (despite alleging that his attempts are attached (ECF No. 2 at 1)), to show exhaustion has been attempted and instead relies solely upon baseless allegations and self-serving statements. Further, Petitioner's entitlement to the application of FSA credits is not so certain that it could be considered futile to exhaust his administrative remedies. *Little v. Andrews*, No. 3:20CV863, 2021 WL 1895890, at *2 (E.D. Va. May 11, 2021).

Petitioner cites to *Coleman v. US Parole Comm'n*, 644 F. App'x 159, 162 (3rd Cir. 2016), for the proposition that the exhaustion requirement should be waived where claims turn only on statutory construction. In *Coleman*, the Third Circuit stated, "[E]xhaustion is not required with regard to claims which turn only on statutory construction. This is especially so where it is unlikely that the agency will change its position, or where the claims turn on broader questions of legal interpretation." *Id.* However, *Coleman* is a Third Circuit case and thus is not binding authority on this Court, which lies in the Fourth Circuit. There is some Fourth Circuit precedent indicating that courts may excuse an exhaustion requirement where the dispute is a matter of statutory construction, though not in the context of petitions for writ of habeas corpus. *See Donald v. Centra, Inc.*, 946 F.2d 1059, 1063 (4th Cir. 1991). Assuming that the same exception is available in habeas cases, petitioner has not demonstrated that the exception applies to his case. Exhaustion is sometimes not required in cases where the dispute turns purely on an issue of statutory construction, because in those cases, the traditional purposes of exhaustion—developing a factual record and obtaining relief before resort to the courts—are absent. Where the legal

question is neatly teed up for the court's review, exhaustion would needlessly delay a decision on the merits. Here, petitioner has implied that the BOP has adopted some policy regarding the application of earned time credits for inmates with medium and high risks of recidivism, but the exact contours of that policy are unclear. In this case, exhaustion of administrative remedies would give the court a better understanding of the policy at issue. While a decision on the merits would eventually involve some measure of statutory interpretation, that decision is best left until after administrative remedies have been exhausted. Petitioners cannot bypass the administrative remedy process by filing a form letter asserting that their petitions turn on an issue of statutory construction.

In addition, there is no evidence that the BOP clearly and unambiguously violated statutory or constitutional rights in calculating Petitioner's FSA credits and their impact on his sentence, and Petitioner has not shown that the administrative procedure is clearly inadequate to prevent irreparable harm. Accordingly, the undersigned **FINDS** that Petitioner has not exhausted his administrative remedies, and the exhaustion requirement should not be waived in this instance. As such, the undersigned respectfully **RECOMMENDS** the presiding District Judge **DENY** the Petition.

### B. Merits

Even if the Court were to waive exhaustion, Petitioner fails to assert a basis for relief under § 2241. FSA time credits can only be applied to a prisoner's sentence if the prisoner meets certain criteria, including that he or she "has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of

imprisonment[.]" 18 U.S.C. § 3624(g). At the time of briefing of this matter, Petitioner was assessed as a medium risk of recidivism. (ECF No. 1-1 at 5). Therefore, by statute, the FSA time credits cannot be applied to his sentence at this time. *See, e.g., Reese v. Heckard*, No. 5:22-cv-00033, 2022 WL 4100849, at *5 (S.D. W. Va. Aug. 5, 2022) (citing *Knight v. Bell*, No. CV JKB-20-3108, 2021 WL 1753791, at *4 (D. Md. May 4, 2021) (finding that the petitioner was not eligible to use any time credits to reduce his sentence because his current PATTERN score showed a high-risk recidivism level and his claim thus failed, and the petition should be denied, and the action dismissed)).

### *PATTERN Score*

Petitioner is essentially asking the Court to order the BOP to correct or adjust his PATTERN score to reflect that he is a low recidivism risk so that his FSA credits can be applied to his sentence. (ECF Nos. 1, 2, 11). However, the BOP's calculation of his PATTERN score is not reviewable. Accordingly, the undersigned **RECOMMENDS** that the District Court **DENY** the Petition, as a prisoner's recidivism risk level is not subject to judicial review, and **DISMISS** this action.

The FSA, enacted on December 21, 2018, allows eligible federal prisoners to earn time credits for successful participation in Evidence Based Recidivism Reduction Programs and Productive Activities. 18 U.S.C. § 3632(d)(4)(A). The BOP utilizes the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) to evaluate "the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism," as well as to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." *United States v. Tinsley*, No. CR

ELH-13-476, 2021 WL 5084691, at *16 n. 8 (D. Md. Nov. 2, 2021) (citing 18 U.S.C. §§ 3632(a)(1), (4)).

PATTERN calculates two separate scores: a person's risk of reoffending in general and his or her risk of reoffending with a crime of violence. *See* Serena Lei, *The First Step Act's Risk Assessment Tool*, Urban Inst. (Apr. 30, 2021), https://apps.urban.org/features/risk-assessment (last visited December 3, 2025). For males, PATTERN includes 15 "risk items," such as an inmate's current age; whether he has a Walsh conviction and/or committed a violent offense; and his criminal history points; history of escapes and/or violence; education score, such as whether the inmate is enrolled in a GED program or has the equivalent of a high school diploma; completion of drug treatment programs; all incident reports in the past 120 months, whether any were serious, and time period since last incident report; whether the inmate agreed to participate in the financial responsibility program; and the number of eligible activities and work programs the inmate completed. Male Pattern Risk Scoring, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3 (last accessed December 3, 2025). Based on the rubric in each category, the inmate is given 15 "general" and "violent" scores, which are totaled to assess whether the inmate is a minimum, low, medium, or high risk of reoffending in general and with a crime of violence. *Id.*; *see* Cut Points Used for PATTERN v. 1.3, Federal Bureau of Prisons, available at https://www.bop.gov/inmates/fsa/docs/fsa_cut_points.pdf?v=1.3 (last accessed December 3, 2025). A "General Male" score between 6 and 39 and a "Violent Male" score between 8 and 24 are considered a low risk level. (*Id.*). A "General Male" score between 40 and 54 and a "Violent Male" score between 25 and 31 are considered a medium risk level.

(*Id.*) A "General Male" score of 55 or more and a "Violent Male" score of 32 or more are considered a high risk level. (*Id.*) An inmate's risk level classification is determined as the highest of the two ratings on the general or violent recidivism scale.

The BOP must reassess an inmate's PATTERN score annually, at a minimum, if the inmate successfully participates in evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(5). As in this case, if the inmate is determined to be a medium or high risk of recidivating and has less than five years until his projected release date, the BOP must perform "more frequent risk reassessments." *Id.*

An inmate's FSA time credits can be applied to his or her sentence to result in earlier release to pre-release custody, such as a residential reentry center ("halfway house") or home confinement, or up to 12 months of credit can be applied to a prisoner's term of supervised release. 18 U.S.C. §§ 3624(g), 3632(d)(4)(C). The credits can be earned retroactively beginning on the date that the FSA was signed into law in 2018. 18 U.S.C. § 3632(d)(4)(A).

In this case, Petitioner's projected release date is presently November 27, 2028. *See* Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/, BOP Register No. 21748-032, (last accessed December 3, 2025). It appears Petitioner is eligible for, and he has earned, FSA time credits. (ECF No. 1-1 at 4). Petitioner now argues that he has demonstrated a reduced risk in recidivism, and his accrued days should be applied so that his projected release date can be updated. However, an error concerning the miscalculation of his recidivism risk level is not reviewable by a court. As stated herein, prisoners' recidivism risk level is determined by their PATTERN score. *Steelman v. FCI Beckley Warden*, No. 5:23-

CV-00599, 2024 WL 1781909, at *3 (S.D.W. Va. Apr. 5, 2024), *report and recommendation adopted*, No. 5:23-CV-00599, 2024 WL 1769948 (S.D.W. Va. Apr. 24, 2024). An inmate's infraction history, work, and program completion are all included in the PATTERN score, but they are only part of the risk assessment system. The PATTERN tool also considers many other variables, including the inmate's age, criminal history, and participation in drug treatment. Because the PATTERN score and recidivism risk level depend on the cumulative effect of fifteen variables, some weighted more heavily than others, improvement in one or some variables may not ultimately reduce a prisoner's recidivism risk level. Consequently, Petitioner's participation in programs have apparently not had a sufficient effect on his PATTERN score to reduce his recidivism risk level.

Further, even assuming his recidivism risk level was miscalculated, 18 U.S.C. § 3625 prohibits judicial review of a prisoner's PATTERN score or recidivism risk level. This statute excludes from judicial review "any determination, decision, or order" made under Chapter 229, subchapter C—§§ 3621–3626. This subchapter includes the implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h), and the BOP's eligibility determinations with respect to the application of FSA time credits. 18 U.S.C. § 3624(g)(1).

Following § 3625, several courts, including this one, have found that PATTERN scores and recidivism risk levels are not subject to judicial review. *See Hicks v. Heckard*, No. 5:23-CV-00581, 2024 WL 833190, at *6 (S.D.W. Va. Feb. 1, 2024), *report and recommendation adopted*, No. 5:23-CV-00581, 2024 WL 818472 (S.D.W. Va. Feb. 27, 2024); *Nevel v. Brown*, No. 5:23-CV-285, 2023 WL 8505881, at *6 (N.D.W. Va. Oct. 27, 2023), *report and recommendation adopted*, No. 5:23-CV-

285, 2023 WL 7490046 (N.D.W. Va. Nov. 13, 2023); *Newell v. Fikes*, No. 2:22-CV-53, 2023 WL 2543092, at \*2 (S.D. Ga. Feb. 21, 2023), *report and recommendation adopted*, No. 2:22-CV-53, 2023 WL 2541126 (S.D. Ga., Mar. 16, 2023); *Welch v. Heckard*, 2023 WL 6885005, \*4 (S.D.W. Va. Sept. 19, 2023), *report and recommendation adopted*, 2023 WL 6882684 (S.D.W. Va. Oct. 18, 2023) (J. Volk) (collecting cases); *Crum v. Young*, 2021 WL 2843835, \*6 (S.D.W. Va. Jan. 27, 2021), *report and recommendation adopted*, 2021 WL 2434358 (S.D.W. Va. June 15, 2021) (J. Volk) ("[W]hile the First Step Act provides criteria for the BOP to consider when designating an inmate to a place of imprisonment, it also states unequivocally that the BOP's designation is not subject to judicial review."); *United States v. Smith*, 2019 WL 4016211, \*2 (W.D. Va. Aug. 26, 2019) ("While the Second Chance Act and the First Step Act expand the BOP's authority to place prisoners, they do not vest placement authority in this Court.") (internal citations omitted).

Finally, there is no indication that Petitioner has successfully petitioned the Warden for approval application of time credits. *See Welch v. Heckard*, 2023 WL 6885005, at \*4 ("Because Welch is at a high recidivism risk level and has not had a petition to apply time credits approved by the Warden, he is not eligible for the application of his FSA time credits."). To grant Petitioner such approval, the Warden would have to determinate the following: (1) Petitioner would not be a danger to society if transferred to prerelease custody or supervised release; (2) Petitioner made a good faith effort to lower his recidivism risk through participation in programs or productive activities; and (3) Petitioner is unlikely to recidivate. Again, there is no indication that Petitioner has been granted such approval by the Warden. Accordingly, the undersigned respectfully **RECOMMENDS** the District Court find that Petitioner is

not entitled to habeas relief and **DENY** the Petition, as Petitioner's recidivism risk level is not subject to judicial review.

### *Loper Bright*

Citing *Loper Bright Enterprises, et al., v. Raimondo*, 603 U.S. 369, 391-94, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024), Petitioner asserts, "the Supreme Court shined a much needed light on all Bureau Program Statements and intentionally concocted [s]chemes, whose sole purpose is to deny Prisoner's [sic] the rights that congress has given them in FSA and SCA." (ECF No. 2 at 5). He further argues that "[t]o apply ETC's under 3624(g)(B) an [i]nmate *must not* meet these (D)(1)(I) requirements." (*Id.* (emphasis in original)). In his reply to Respondent's Response, Petitioner again asserts that "(D)(i) is for those to be considered for pre-release custody. The BOP is adding this requirement to deny the application of [P]etitioner[']s ETC's." (ECF No. 11 at 1). Thus, it appears Petitioner is trying to argue that he has demonstrated a risk reduction, the BOP has refused to assess and award that reduction, and he should be entitled to his ETC. However, aside from *Loper Bright*, Petitioner provides no authority to support his claims, and his reliance upon *Loper Bright* is misplaced. *Loper Bright Enterprises, et al., v. Raimondo*, 603 U.S. 369, 391-94, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024).

As explained herein, under the FSA, eligible inmates may *earn* time credits irrespective of his or her recidivism risk. *See* 18 U.S.C. § 3624(g) and 28 C.F.R. § 523.42. Only inmates with low and minimum risk scores, however, may have these earned credits applied to his or her sentence, pre-release custody (placement on home confinement or a residential reentry facility), or early transfer to supervised released.

*Id.*; *see also* 18 U.S.C. § 3624(g); 28 C.F.R. § 523.44(c)(1) and (d)(1). Title 18 U.S.C. § 3624(g) provides, in pertinent part, as follows:

> (1) Eligible prisoners.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—
> (A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;
>
> (B) *has shown through the periodic risk reassessments a demonstrated recidivism risk reduction* or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>
> (C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and
>
> (D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner—
>
>> (I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or
>>
>> (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison ....
>
> (ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624 (emphasis added).

Prior to *Loper Bright*, "[i]f Congress [had] explicitly left a gap for the agency to fill, there [was] an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," and Courts were required to accord substantial deference to the agency's reasonable interpretation of the statute. *See Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), *overruled by*, *Loper Bright Enterprises, et al., v. Raimondo*, 603 U.S. 369,

391-94, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024). In *Chevron*, the Supreme Court stated that it had "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Id.*, 467 U.S. at 844. Under *Chevron*, the Court's role in cases where a statute was ambiguous was to examine whether the administrative agency's implementation of the statute through *regulations* was a reasonable one. *Id.*, 467 U.S. at 845. However, *Chevron* was overruled by *Loper Bright*. *Loper Bright*, 603 U.S. at 391-94.

*Loper Bright* changed the Court's role in reviewing an administrative agency's interpretation of a statute. *Id.* Specifically, a Court may not under the Administrative Procedures Act ("APA") defer to an agency's interpretation of the law simply because the statute is ambiguous. *Id.* Pivotal to the analysis, is that the challenge raised pertains to a *regulation* put in place by the administrative agency (such as the BOP) that is being challenged under the APA. *Id.* Additionally, there must be some ambiguity in the statute the agency administers calling into question the validity of the *regulation* challenged. *Id.*

In the instant case, Petitioner appears to argue that he is entitled to a risk reduction based on programming he has completed while incarcerated, or alternatively, that the BOP is inappropriately restricting his entitlement to apply his ETC based on his medium recidivism risk assessment, and he contends that *Loper Bright* allows for judicial review of these issues. The undersigned, however, finds Petitioner's arguments without merit. Petitioner is attempting to challenge unambiguous statutes (18 U.S.C. §§ 3624(g)(1) and 3632). First, Section 3624(g)(1) explicitly prohibits the BOP from applying FSA credit unless an inmate has a minimum

or low-risk recidivism scores (PATTERN score). To the extent Petitioner is taking issue with his eligibility under the FSA, he is challenging the statute and not BOP regulations. *See Skanes v. Carter*, 2025 WL 754335, *4 (D.Md. March 10, 2025); *see also Jones v. Joseph*, 2024 WL 5340423, *8 (D.S.C. Dec. 19, 2024) (finding *Loper Bright* to be inapplicable because Section 3624(g) "unambiguously mandates that only inmates with low and minimum recidivism scores are eligible to have earned time credits under the FSA applied toward pre-release custody or supervised released."); *Purdy v. Carter*, 2024 WL 4651275, *5 (D. Md. Nov. 1, 2024) (same); *Smith v. Ray*, 2024 WL 4472388, *4 (N.D.W. Va. Sep. 11, 2024) (rejecting petitioner's *Loper Bright* argument because petitioner's "ineligibility is not based on BOP's interpretation of the First Step Act[,] but on the eligibility requirements of the statute itself contained in § 3624(g)(1)"); *see also Cramer v. Gunther*, 2025 WL 1195582, *6 (D. Az. April 2, 2025)("*Loper Bright* is not implicated because the FSA itself requires that individuals must have a low risk of recidivism for the earned time credits to be applied."), *report and recommendation adopted*, 2025 WL 1193090 (D. Az. April 24, 2025) (internal citation omitted).

To the extent Petitioner is challenging the BOP's interpretation and implementation of FSA in creating and relying upon the PATTERN system, the Petition fails to state a viable claim because it involves a permissible interpretation under the statute. Section 3632 clearly mandated the creation and implementation of a risk and needs assessment system by the Attorney General. *Purdy*, 2024 WL 4651275, at *5; *see also Harris v. Holzapfel*, 2025 WL 769606, *11 (S.D.W. Va. Feb. 14, 2025) ("[T]he BOP promulgated PATTERN, pursuant to the FSA, which delegated the Attorney General the development of 'a risk and needs assessment system' in order to 'determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner

as having minimum, low, medium, or high risk for recidivism.'") (quoting U.S.C. § 3632(a)(1)), *report and recommendation adopted*, 2025 WL 757827 (S.D.W. Va. March 10, 2025). Utilizing the PATTERN tool to restrict the application of FSA credits to prisoners with minimum or low risk recidivism scores does not amount to 'interpretation' of a statute. *Purdy*, 2024 WL 4651275, at *5; *Cramer*, 2025 WL 1195582, at *6 (finding petitioner's reliance on *Loper Bright* misplaced because the BOP's use of the PATTERN tool to restrict application of FSA credits to prisoners with minimum or low risk recidivism scores amounts to a challenge to the statute instead of the regulation). "Rather, the BOP has done what Congress commanded it to do: create a method by which it can be determined whether a prisoner is likely to recidivate and to withhold FSA credits until that likelihood is diminished to a minimum or low risk." *Purdy,* 2024 WL 4651275, at *5; *see also Cogdell v. Reliance Standard Life Insurance Co.*, 2024 WL 4182589, *3 n. 6 (E.D. Va. Sept. 11, 2024) ("*Loper Bright* is applicable only insofar as there is statutory ambiguity"). Once again, the PATTERN system contains both static (e.g. criminal history) and dynamic (e.g. participation in education or drug treatment programs, receipt or lack of incident reports) factors drawn from multiple sources resulting in an ever-changing PATTERN score for inmates. "[E]ven post-*Loper Bright*, courts should still defer to an agency's interpretation when a statute expressly delegates interpretive authority to an agency or when the statute allows the agency to 'fill up the details of a statutory scheme.'" *Harris*, 2025 WL 769606, at *10 (citing *Clinkenbeard v. King*, 2024 WL 4355063 (D. Minn. Sept. 30, 2024). As further noted by the Court in *Clinkenbeard*, "the Attorney General and the [BOP] are entrusted with sole authority to compute federal sentences" and the FSA "also expressly delegates at least some authority to the Attorney General and [BOP] to fill up the details of the

time credit system [by directing them to develop a 'risk and needs assessment system but giving the agency the discretion to determine the parameters thereof]." *Clinkenbeard*, 2024 WL 4355063, at *4 (internal citations omitted). In accordance with that discretion, the BOP formulated the PATTERN scoring system.

Accordingly, the undersigned finds that Petitioner's above *Loper Bright* claim is without merit. Although Petitioner may clearly *earn* time credits with a medium or high risk of recidivism score, he may not have these credits *applied* to his prerelease custody or early transfer to supervised release. *See King v. Joseph*, 2023 WL 6626630, *6 (D.S.C. Sept. 14, 2023) ("[T]he First Step Act expressly states that an inmate with a medium or high risk of recidivism according to his PATTERN score may not have successfully completed recidivism reduction programs and productive activities applied towards his time credits until he receives a minimum or low risk PATTERN score for two consecutive assessments.") (internal citations omitted); *Compton v. Brown*, 2023 WL 5767323, *4 (N.D.W. Va. Aug. 18, 2023) ("Petitioner is not entitled to have the credits *applied* while he is at 'medium' risk of recidivating.") (emphasis in original); *Frazier v. Strong*, 2023 WL 5155939, *4 (D.S.C. June 27, 2023) ("While [Petitioner] is free to earn time credits as an inmate with a medium risk recidivism level, under 18 U.S.C. § 3624(g)(1)(D)(i)–(ii), the BOP cannot apply those time credits to [his] sentence unless and until [he] has a minimum or low risk recidivism level for two consecutive assessments for prerelease custody or a minimum or low risk recidivism level for the last assessment for supervised release.") (citation omitted).

For all of the above reasons, the undersigned **FINDS** that Petitioner fails to assert a cognizable claim under the FSA or any other law. Therefore, the undersigned

respectfully **RECOMMENDS** that the presiding District Judge **DENY** the petition and **DISMISS** this action.

## IV.    Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** Petitioner's Motion to Waive the Requirements to Exhaust Administrative Remedies, (ECF No. 4), be **DENIED**; the Petition for a Writ of Habeas Corpus, (ECF No. 1), be **DISMISSED**; and remove this matter from the docket of the Court.

Petitioner is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v.*

*Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk and Magistrate Judge Reeder.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:** December 31, 2025

Joseph K. Reeder
United States Magistrate Judge